IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN HUITT,                                    3:14-CV-01064-BR

          Plaintiff,                            OPINION AND ORDER

v.

OPTUM HEALTH SERVICES, a
wholly-owned subsidiary of
UNITED HEALTH GROUP, INC.,

          Defendant.


**SUSAN HUITT**
16617 S.E. Naegeli Drive
Portland, OR 97236
(503) 465-6639

          Plaintiff, *Pro Se*

**SARAH J. RYAN**
**APRIL L. UPCHURCH FREDRICKSON**
Jackson Lewis PC
1001 S.W. Fifth Avenue
Suite 1205
Portland, OR 97204
(503) 345-4162

          Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#87) for Summary Judgment of Defendant Optum Health Services.[1]  For the reasons that follow, the Court **GRANTS** Defendant's Motion.


BACKGROUND

The following facts are taken from the parties' summary-judgment materials and are undisputed unless otherwise noted.

Defendant employed Plaintiff Susan Huitt as a WorkLife Resource & Referral Consultant (RRC) from October 2005 through April 2014.  RRCs are "responsible for providing [United Health Group] UHG[2] members who call into the Employee Assistance Program [with] three different referrals for various services in their local area."  Decl. of Mary Kauppila at ¶¶ 3-4.  RRCs are required to "complete a minimum number of searches per week in a timely manner."  *Id*.  At some point Plaintiff "[took] on, in addition to her regular responsibilities, the task of working on the 'Admin' team."  Kauppila Decl. at ¶ 5.

In October 2011 Plaintiff began receiving treatment for various medical conditions.  Plaintiff's medical benefits were

_____

[1] Defendant notes in its Motion that its correct entity name is Optum Health Services rather than Optumhealth as it appears in Plaintiff's Complaint.  The Court, therefore, directs the Clerk of Court to correct the docket accordingly.

[2] Defendant is a wholly-owned subsidiary of United HealthGroup (UHG).

provided by UHG.

Plaintiff reported to WorkLife Resource and Referral Supervisor Erin Cochrun from 2005 through November 2011. Cochrun left Optum in November 2011, and Plaintiff then began reporting to WorkLife Resource and Referral Supervisor Mary Kauppila.

Kauppila testifies in her Declaration that after she had supervised Plaintiff for several months, she was notified by some of Plaintiff's coworkers that Plaintiff completed the number of searches required by Defendant's metrics, but "often took more time than her teammates to complete searches and often worked late to get searches completed." Kauppila Decl. at ¶ 6. Plaintiff's coworkers also reported Plaintiff was unable to complete her work for the Admin team.

In February 2012 Kauppila began discussing her concerns about Plaintiff's job performance with Plaintiff in their monthly one-on-one meetings.

From February 2012 to August 2012 Kauppila received further reports from Plaintiff's coworkers who "complain[ed] about being partnered with [Plaintiff] because they felt they were doing the majority of the work . . . [and Plaintiff] had difficulty communicating with team members and with Kauppila and would send unnecessarily lengthy emails." Kauppila Decl. at ¶ 8.

In February 2012 UHG denied Plaintiff's request for reimbursement for "certain treatment" that she had been receiving

3 - OPINION AND ORDER

since October 2011.  In March 2012 Plaintiff appealed the denial
of treatment to UHG.  Plaintiff also contacted the United States
Department of Labor (DOL) regarding the denial of treatment.  At
some point Plaintiff, a DOL employee, and a representative from
UHG participated in a conference call regarding the denial of
Plaintiff's treatment.  Kauppila was not involved in the denial
of Plaintiff's treatment and was not aware of the conference call
until August 6, 2012.

On July 22, 2012, Plaintiff submitted a second-level appeal
to UHG regarding the denial of benefits.  Kauppila was unaware of
Plaintiff's second-level appeal until August 6, 2012.

In August 2012 Kauppila and the manager of the Resource &
Referral Team, Sarah Zaniewski, concluded the added responsi-
bilities of the Admin team were too much for Plaintiff in
combination with her job duties.  Accordingly, on August 6, 2012,
Kauppila met with Plaintiff and explained to her that Kauppila
had noticed Plaintiff was unable to keep up with her regular
duties in a regular work day.  Kauppila also told Plaintiff that
she had received complaints from some of Plaintiff's coworkers,
including A.J., who did not want to be partnered with Plaintiff.
Kauppila then informed Plaintiff that she was being removed from
the Admin team.  Plaintiff did not suffer any decrease in
compensation or benefits as a result of being removed from the
Admin team nor was she given more burdensome work.  In fact, her

4 - OPINION AND ORDER

essential job duties remained the same.

During the August 6, 2012, meeting but after Kauppila informed Plaintiff that she was being removed from the Admin team and that A.J. had complained about her, Plaintiff told Kauppila that A.J. had given her work computer user name and password to a neighbor and had allowed the neighbor to use her work computer. Plaintiff believed A.J.'s actions violated the Health Insurance Portability and Accountability Act (HIPAA).  Plaintiff testified at deposition that she did not advise Kauppila or other managers about A.J.'s actions before the August 6, 2012, meeting because she "didn't want to see anything happen to [A.J.] in a negative way."  Decl. of April Upchurch Fredrickson, Ex. A at 12. Kauppila advised Zaniewski about Plaintiff's allegation against A.J.

Zaniewski consulted with Defendant's Human Resources Department (HRDirect), which advised her to speak with A.J. directly about Plaintiff's allegation.  When Zaniewski spoke with A.J., A.J. denied Plaintiff's allegation and clarified she had permitted her neighbor to use her home computer rather than her work computer.  Zaniewski and HRDirect ultimately concluded Plaintiff's allegation could not be substantiated and that further steps to address the issue were not required.

On August 22, 2012, Plaintiff asked Kauppila for a written explanation for her removal from the Admin team.  Kauppila

responded with a memorandum in which she noted:

> Several people on the Admin team have direct
> feedback to me about [Plaintiff's] performance
> when they were partnered with her on Admin. They
> felt that when they were partnered with
> [Plaintiff] that the burden for the Admin work was
> not shared. They did not experience the same
> partnership and delegating of responsibilities
> that they did with other Admin team members and
> they "dreaded" being partnered with her. They
> stated that they would ask [Plaintiff] if she
> could assist with some part of the Admin
> responsibilities and she provided a "reason" or an
> "excuse" for why she was unable to help. Several
> said they simply stopped asking or providing
> feedback because they got tired of always hearing
> a reason for why she was not available to help.
>
> The other late Admin team members also stated that
> when [Plaintiff] was on Admin they would often
> have to stay late to make sure all of their
> responsibilities were completed and that did not
> happen when they were partnered with other people.
>
> [Plaintiff] became overwhelmed at times with
> managing the demands of Admin in addition to her
> other daily responsibilities as an RRC including
> not responding in a timely manner to emails or not
> responding at all and not completing her self
> assignment in a timely manner.
>
> There was also a concern with [Plaintiff's] email
> communications related to Admin. [Plaintiff] was
> taking too much time out of her day creating her
> communications and her team mates and management
> were taking too much time deciphering
> [Plaintiff's] communications because they were
> lengthy and confusing. I also experienced having
> to re-hash the same issue with [Plaintiff] and had
> to ask her to be willing to put things behind her
> once they have been discussed because an
> inordinate amount of time was spent discussing the
> same issue which was causing frustration and
> again, taking too much time out of our day.

Kauppila Decl., Ex. G.

6 – OPINION AND ORDER

Defendant alleges Plaintiff's performance failed to improve. On August 26, 2012, Kauppila and Zaniewski drafted an interim review for Plaintiff that included a rating of "needs improvement." Kauppila and Zaniewski asked Plaintiff to complete a self-evaluation in order to assess and to discuss Plaintiff's interim review. Plaintiff, however, never completed her self-evaluation.

On August 29, 2012, Plaintiff was off from work sick.

On August 30, 2012, Kauppila and Zaniewski drafted a Corrective Action Plan (CAP) that provided Plaintiff with 90 days to improve her performance.

On August 30, 2012, before Kauppila and Zaniewski were able to meet with Plaintiff or to present her with her interim review of CAP, Plaintiff emailed Kauppila and Zaniewski and advised them that her doctor had placed her on short-term disability leave due to her "serious medical condition," that she would be on leave longer than five days, and that she would be filing a claim for short-term disability benefits through Sedgwick (UHG's third-party administrator of short-term disability). Plaintiff then began a leave of absence under the Family Medical Leave Act (FMLA).

Plaintiff did not return to work after August 29, 2012, and exhausted her FMLA leave by October 31, 2012. After October 31, 2012, Plaintiff was on a leave of absence without pay until

April 2, 2014, at which point Defendant terminated Plaintiff's employment because she could not return to work.

In March 2013 while Plaintiff was on her leave of absence, she registered a complaint with HRDirect alleging Sedgwick violated HIPAA when it left a copy of Plaintiff's medical records unattended on her front doorstep.  HRDirect investigated and in October 2013 determined Plaintiff's complaint was "without merit."  Fredrickson Decl., Ex. H at 2.

On July 29, 2013, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) in which she alleged Defendant:  (1) violated Oregon Revised Statute § 659A.199 when it subjected her to "a hostile working environment and discriminatory treatment" after she reported to Defendant what Plaintiff "believed were possible violations of HIPPA [*sic*] and other privacy laws by certain other employees" and (2) violated Oregon Revised Statute § 659A.112 when it subjected her to "a hostile working environment due in substantial part because [she] has a disability and require[s] reasonable accommodation to [her] disability."  Fredrickson Decl., Ex J at 2.

On March 13, 2014, Defendant sent Plaintiff a letter in which it advised:

> On August 29, 2012 you began a leave of absence. Your leave under the Family and Medical Leave Act (FMLA) was exhausted on October 31, 2012.
>
> You have now been on leave for over 18 months, and as of the date of this letter, you have not been

released to return to work (with or without
accommodations).  Further, the medical
documentation submitted by your health care
provider does not list any anticipated date on
which you will be able to return to work with or
without accommodation(s).  Therefore, UHG has
determined that your employment will be
administratively terminated effective April 2,
2014.

Fredrickson Decl., Ex. G at 1.

On June 2, 2014, Plaintiff filed a *pro se* complaint in
Multnomah County Circuit Court against Defendant and asserted
claims for disability discrimination in violation of Oregon
Revised Statute § 659A.112, whistleblower retaliation in
violation of Oregon Revised Statutes §§ 659A.199 and 659A.230,
and wrongful termination.

On July 2, 2014, Defendant removed the matter to this Court
on the basis of diversity and federal-question jurisdiction.

On August 8, 2016, Defendant filed a Motion for Summary
Judgment.

On August 10, 2016, the Court issued a Summary Judgment
Advice Notice to Plaintiff advising her that if she did not
submit evidence in opposition to Defendant's Motion, summary
judgment could be entered against her.

The Court took Defendant's Motion under advisement on
October 6, 2016.

**STANDARDS**

Summary judgment is appropriate when "there is no genuine

9 - OPINION AND ORDER

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.* "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a

10 - OPINION AND ORDER

material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id*.


## DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's claims.

## I.  Plaintiff's First Claim against Defendant for disability discrimination in violation of Oregon Revised Statute § 659A.112.

Plaintiff alleges in her First Claim that she has a disability as defined by Oregon Revised Statute § 659A.104(1)(a) that substantially limits her ability to perform major life activities, that she was a qualified individual with a disability, that she was able to perform the essential functions

11 - OPINION AND ORDER

of her job with or without reasonable accommodation, and that
Defendant discriminated against her by "creating a hostile work
environment because of [her] disability."  Compl. at ¶ 23.
Plaintiff also alleges she was subject to adverse employment
actions when Defendant removed her from the Admin team and when
it terminated her employment.

Defendant moves for summary judgment on the grounds that
Plaintiff did not suffer an adverse employment action when
Defendant removed her from the Admin team, that Plaintiff has not
established she was removed from the Admin team because of her
disability, that Plaintiff was not a qualified individual with a
disability at the time of her termination, and that Plaintiff's
termination was not an adverse employment action.

**A.    Oregon disability discrimination standards.**

Oregon Revised Statute § 659A.112(1) provides:  "It is
an unlawful employment practice for any employer to . . .
discharge from employment or to discriminate in compensation or
in terms, conditions or privileges of employment on the basis of
disability."

To establish a *prima facie* case of discrimination under
§ 659A.112 the plaintiff must show:  (1) she is a qualified
individual with a disability, (2) she suffered an adverse
employment action, and (3) there was a causal connection between
the adverse employment action and her disability.  *Rogers v.*

12 - OPINION AND ORDER

*Oregon Trail Elec. Consumers Co-op., Inc.,* No. 3:10-CV-1337-AC,
2012 WL 1635127, at *22 (D. Or. May 8, 2012)(citing *Hutton v. Elf
Atochem N. Am. Inc.*, 273 F.3d 884, 891 (9th Cir. 2001)).  *See
also Wessels v. Moore Excavation, Inc.*, No. 3:14-cv-01329-HZ,
2016 WL 1589894, at *3 (D. Or. Apr. 18, 2016)(same).  The proof
required at the *prima facie* stage "'is minimal and does not even
need to rise to the level of a preponderance of evidence.'"
*Rogers*, 2012 WL 1635127, at *22 (quoting *Wallis v. J.R. Simplot
Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

     If the plaintiff establishes a *prima facie* case, the
burden shifts to the defendant to provide a legitimate,
nondiscriminatory reason for the adverse employment action.
*Wessels*, 2016 WL 1589894, at *3 (citing *Curley v. City of N. Las
Vegas*, 772 F.3d 629, 632 (9th Cir. 2014)).

     If the defendant provides a legitimate, nondiscriminatory
reason for the adverse employment action, the burden shifts back
to the plaintiff to prove the reason given by the defendant was
pretextual.  To establish pretext the plaintiff must either raise
an issue of fact as to whether the defendant's legitimate,
nondiscriminatory reason is genuine or introduce direct evidence
of a discriminatory motive.  *Villiarimo v. Aloha Island Air,
Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).  *See also Tyson v. Or.
Anesthesiology Group, P.C.*, No. 03-CV-1192-HA, 2008 WL 2371420,
at *5 (D. Or. June 6, 2008).  Temporal proximity alone is

insufficient to create evidence of pretext. *Ventura v. Johnson Controls, Inc.*, Nos. 08-CV-1318-PK, 09-CV-190-PK, 2010 WL 3767882, at *10 (D. Or. Sept. 16, 2010)(quoting *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)(although the temporal proximity of an adverse employment action to an employee's protected behavior may suffice to support a "minimal *prima facie* case of retaliation," it is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question" of retaliation).

**B. Plaintiff did not suffer an adverse employment action when Defendant removed her from the Admin team.**

As noted, Plaintiff alleges Defendant discriminated against her because of her disability when it removed her from the Admin team.  Defendant, however, contends Plaintiff's removal from the Admin team does not constitute an adverse employment action because her removal did not result in any reduction in compensation or any negative effects in her terms of employment or employment conditions.

" 'An adverse employment action is one that materially affects the terms, conditions, or privileges of the plaintiff's employment.'" *Redwind v. Western Union, LLC*, No. 3:14-cv-01699-AC, 2016 WL 3606595, at *12 (D. Or. May 2, 2016)(quoting *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000)).  "Among those employment actions that may qualify as adverse are termination, demotion, suspension, removal of job

14 – OPINION AND ORDER

responsibilities, imposition of more burdensome work activities, overtime, reduction in salary or benefits, and substantial interference with work facilities that are key to job performance." *Leighton v. Three Rivers School Dist.*, No. 1;12-cv-1275-CL, 2015 WL 272894, at *7 (D. Or. Jan. 20, 2105)(citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002)(the plaintiff established a *prima facie* case of disparate treatment when the defendant subjected the plaintiff to overtime and termination "that constituted a material change in the terms and conditions of [the plaintiffs] employment."). *See also Chuang v. Univ. of Cal. Davis, Bel. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000)("[T]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment," and, therefore, qualifies as an adverse employment action); *Kortan v. Ca. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000)(no adverse employment action when the plaintiff was not demoted, given different or more burdensome work, fired or suspended, denied any raises, or suffered a reduction in salary or any other benefit).

        The record reflects Plaintiff did not suffer any decrease in compensation or benefits nor was she given more burdensome work responsibilities as a result of being removed from the Admin team.  In fact, the record does not reflect

Plaintiff suffered any negative effects in her RRC job as a result of her removal from the Admin team.

On this record the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to whether removal from the Admin team constituted an adverse employment action. Because Plaintiff cannot establish all the elements of her First Claim for disability discrimination, the Court grants Defendant summary judgment on Plaintiff's First Claim for disability discrimination based on her removal from the Admin team.

**C.   Plaintiff was not a qualified individual with a disability at the time of her termination.**

Plaintiff alleges Defendant violated Oregon Revised Statute § 659A.112(1) when it terminated her because of her disability. Defendant, however, asserts Plaintiff was not a qualified individual with a disability from September 2012 to the time of her termination effective April 2, 2014. Plaintiff, therefore, cannot establish all the elements of a claim for disability discrimination related to her termination.

As noted, in order to establish a *prima facie* case of discrimination under § 659A.112 Plaintiff must show, among other things, that she was a qualified individual with a disability at the time of termination. Under § 659A.112 a qualified individual with a disability is one who can perform the essential functions of the job with or without reasonable accommodation.

16 - OPINION AND ORDER

"Determining whether Plaintiff is a 'qualified individual' requires the Court to consider whether Plaintiff was able to perform the essential functions of the . . . position at the time of [her] termination *without* accommodation, and then, if [she] cannot, whether [s]he was able to do so *with* reasonable accommodation." *Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-cv-01740-HU, 2014 WL 585376, at *14 (D. Or. Feb. 13. 2014)(emphasis in original)(citing *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006)). If Plaintiff could not perform the essential functions of the position with a reasonable accommodation, § 659A.112 does not apply. *See Cripe v. City of San Jose*, 261 F.3d 877, 884-85 (9th Cir. 2001).

The record reflects Plaintiff was unable to perform the essential functions of her RRC job with or without reasonable accommodation after she went on medical leave on August 30, 2012, through her termination in April 2014. Moreover, Plaintiff testified at deposition that "starting in September of 2012 [she could not] have performed the central functions of [her] job with or without accommodation," and she remained unable to do so up to and after the date of her termination letter on March 13, 2014. Fredrickson Decl., Ex. A at 29, 37. In fact, Plaintiff took medical leave on August 30, 2012, and never returned to her job with Defendant or took any other job.

The Court concludes in the face of Defendant's Motion

Plaintiff has not established a genuine dispute of material fact exists as to whether she was a qualified individual with a disability at the time of her termination.  Accordingly, with a failure of proof as to that material element, Plaintiff's First Claim for disability discrimination in violation of § 659A.112 fails, and, therefore, the Court grants Defendant's Motion for Summary Judgment as to that claim.

## II.  Plaintiff's Second and Third Claims for whistleblower retaliation.

Plaintiff alleges in her Second Claim that her "multiple acts of reporting ERISA and HIPPA [*sic*] violations to defendant and to the Department of Labor, Employee Benefits Security Administration constituted a report of information plaintiff reasonably believed was evidence of a violation of federal law, rule, or regulation."  Compl. at ¶ 32.  Plaintiff alleges Defendant terminated her "in substantial part due to [her] report of a violation of law, rule, or regulation" and retaliated against her in violation of Oregon Revised Statute § 659A.199 "by creating a hostile work environment because of her reports of federal law violations."  Compl. at ¶¶ 33-34.

In her Third Claim Plaintiff alleges "Defendants engaged in the acts alleged [in her Complaint] for the reason that plaintiff commenced a complaint against defendant with BOLI" and "Defendants terminated plaintiff's employment in substantial part due to plaintiff's report of a violation of law, rule, or

18 – OPINION AND ORDER

regulation in violation of ORS 659A.230."  Compl. ¶¶ 38-39.

Defendant moves for summary judgment on Plaintiff's Second and Third Claims on the grounds that (1) to the extent Plaintiff alleges she was terminated or otherwise retaliated against for reporting an ERISA violation, her claims are preempted by ERISA; (2) Plaintiff cannot establish she engaged in a protected activity for purposes of her Third Claim; (3) Plaintiff cannot establish a causal link between her alleged protected activity and a cognizable employment action; and (4) Plaintiff did not suffer adverse employment actions when Defendant removed her from the Admin team and terminated her employment.

**A.    Whistleblower standards.**

Oregon Revised Statute § 659A.199(a) provides:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

Oregon Revised Statute § 659A.230 provides:

> It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee . . . for the reason that the employee has in good faith reported criminal activity by any person, has in good faith caused a . . . complaint to be filed against any person, . . . has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

To survive summary judgment on a whistleblower claim

19 - OPINION AND ORDER

under §§ 659A.199 or 659A.230 a plaintiff must identify

> the existence of facts from which a reasonable
> fact finder could conclude . . . she engaged in
> protected activity . . . [and] defendant[]
> retaliated against her in response to that
> activity. . . . [I]f the employer asserts a
> non-discriminatory reason for the employee's
> termination, the plaintiff must show that the
> employer would not have made the same decision
> absent a discriminatory motive.

*Merrill v. M.I.T.C.H. Charter Sch. Tigard*, No. 10-CV-219-HA, 2011 WL 1457461, at *7 (D. Or. Apr. 4, 2011)(citations omitted). *See also Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (applies burden-shifting framework to state and federal claims).

To establish a *prima facie* case of retaliation under Oregon Revised Statutes §§ 659A.199 and 659A.230 the "[p]laintiff 'must show (1) she was engaging in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision.'" *Sandberg v. City of N. Plains*, No. 10-CV-1273-HZ, 2012 WL 602434, at *7 (D. Or. Feb. 22, 2012) (quoting *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 785 (9th Cir. 1986)).[3] *See also Shultz v. Multnomah Cty.*, No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. May 27, 2009) (same).

---

[3] Courts have held "Title VII of the Civil Rights Act generally provides guidance in interpreting the employment discrimination provisions of O.R.S. 659A." *James v. Or. Sandblasting & Coating, Inc.*, 2016 WL 5402218, at *2 n.1 (D. Or. Sept. 25, 2016).

20 - OPINION AND ORDER

To establish causation the plaintiff must show her protected activity was a "'substantial factor in the motivation to discharge the employee.'" *Sandberg*, 2012 WL 602434, at *7 (quoting *Estes v. Lewis and Clark College,* 152 Or. App. 372, 381 (1998)). *See also Huff v. City of Portland*, Civ. No. 05-1831-AA, 2008 WL 1902760, at *6 (D. Or. Apr. 28, 2008)("Plaintiff bears the burden of establishing that her alleged disclosures constituted 'a substantial factor' in the discontinuation of her employment.").

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the inference of retaliation by offering a legitimate, nondiscriminatory reason for the employee's termination.  If the defendant successfully rebuts the inference of retaliation, the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual.  *Neighorn v. Quest Health Care*, No. 1:10-CV-03105-CL, 2012 WL 1566176, at *28 (D. Or. May 2, 2012).

**B.    To the extent that Plaintiff alleges she was terminated or otherwise retaliated against for reporting ERISA violations, her claims are preempted by ERISA.**

As noted, Plaintiff alleges Defendant terminated her in substantial part because she reported ERISA violations to Defendant, to the Department of Labor, and/or to the Employee Benefits Security Administration.  Specifically, Plaintiff alleges in her Complaint that she "reported what she believed to

21 - OPINION AND ORDER

be violations of ERISA by filing an internal appeal with

defendant challenging its refusal to approve payment for

plaintiff's pain management therapy."  Compl. at ¶ 9.

      **1.    ERISA preemption standards.**

      In *Aetna Healthcare v. Davila* the Supreme Court

explained ERISA preemption as follows:

> Congress enacted ERISA to "protect . . . the
> interests of participants in employee benefit
> plans and their beneficiaries" by setting out
> substantive regulatory requirements for employee
> benefit plans and to "provid[e] for appropriate
> remedies, sanctions, and ready access to the
> Federal courts." 29 U.S.C. § 1001(b).  The
> purpose of ERISA is to provide a uniform
> regulatory regime over employee benefit plans.
> To this end, ERISA includes expansive pre-emption
> provisions, *see* ERISA § 514, 29 U.S.C. § 1144,
> which are intended to ensure that employee benefit
> plan regulation would be "exclusively a federal
> concern." *Alessi v. Raybestos-Manhattan, Inc.*,
> 451 U.S. 504, 523 (1981).
>
> ERISA's "comprehensive legislative scheme"
> includes "an integrated system of procedures for
> enforcement." *Russell*, 473 U.S., at 147 (internal
> quotation marks omitted).  This integrated
> enforcement mechanism, ERISA § 502(a), 29 U.S.C.
> § 1132(a), is a distinctive feature of ERISA.
>
>                   * * *
>
> Therefore, any state-law cause of action that
> duplicates, supplements, or supplants the ERISA
> civil enforcement remedy conflicts with the clear
> congressional intent to make the ERISA remedy
> exclusive and is therefore pre-empted.  *See* 481
> U.S. at 54-56; *see also Ingersoll-Rand Co. v.*
> *McClendon*, 498 U.S. 133, 143-145 (1990).

542 U.S. 200, 208 (2004).

      ERISA's preemption provision provides ERISA shall

22 - OPINION AND ORDER

generally "supersede any and all State laws insofar as they may
now or hereafter relate to any employee benefit plan described in
section 1003(a) of this title and not exempt under section
1003(b) of this title."  29 U.S.C. § 1144(a).

ERISA bars employers from retaliating "against any
person because [s]he has given information . . . in any inquiry
or proceeding relating to" ERISA.  29 U.S.C. § 1140.  The Supreme
Court has held ERISA preemption applies when a plaintiff's state-
law claim falls within the purview of § 1144.  *Metro. Life Ins.
Co. v. Taylor,* 481 U.S. 58, 63-64 (1987).

**2.   Analysis.**

The Ninth Circuit has held claims alleging
retaliation or discrimination because of a plaintiff's report of
"concerns about 'potential and/or actual violations . . . of
ERISA'" are preempted by ERISA.  *See, e.g., Hashimoto v. Bank of
Haw.*, 999 F.2d 408, 411 (9th Cir. 1993)("[W]e hold the Hawaii
Whistle Blower's Act, to the extent an ERISA violation is
involved, [is] preempted by the specific provision of ERISA
protecting whistle blowers such as [the plaintiff].").  District
courts in the Ninth Circuit have also found state whistleblower
claims are preempted by ERISA.  *See, e.g., Perez v. Brain*, 2015
WL 3505249, at *11 (C.D. Cal. Jan. 30, 2015)("When read together
with the other allegations in the [second amended complaint],
. . . [the plaintiff] sufficiently pleads . . . a 'discharge' in

23 - OPINION AND ORDER

violation of" ERISA, and, therefore, the plaintiff's state-law claim is preempted by ERISA). *Compare Yoshimura v. Haw. Carpenters Union Local 745*, 2015 WL 6126805, at *4 (D. Haw. Oct. 15, 2015)(the plaintiff's state whistleblower claim was not preempted by ERISA because the plaintiff did not allege he made any reports of ERISA violations).

On this record the Court concludes to the extent that Plaintiff alleges she was terminated or otherwise retaliated against for reporting violations of ERISA, her claims are preempted by ERISA pursuant to *Hashimoto*. The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's Second and Third Claims to the extent that they are based on Plaintiff's alleged termination for reporting violations of ERISA.

## C.    Plaintiff has not established she engaged in a protected activity for purposes of § 659A.230.

Plaintiff alleges in her Third Claim that Defendant terminated her in retaliation for commencing a complaint with BOLI against Defendant. Defendant, however, points out that Oregon courts have held § 659A.230 does not apply to protect individuals who have filed complaints with administrative agencies. *See, e.g., Huber v. Or. Dep't of Ed.*, 235 Or. App. 230, 238 (2010)("The critical flaw in plaintiff's position is that his complaint to the DHHS and threat to complain to the OSBN were administrative matters . . . and were therefore not

24 - OPINION AND ORDER

protected by ORS 659A.230."); *Mantia v. Hanson*, 190 Or. App. 36, 41 n.3 (2003) (the plaintiff's complaint about "allegedly unsafe work conditions and threat . . . to complain to Oregon occupational safety authorities about those conditions" was not protected by § 659.550[4]).

The Court, therefore, concludes on this record that Plaintiff has not established she engaged in activity protected by § 659A.230.

**D.    Plaintiff has not established a causal connection between the alleged adverse employment actions and her allegedly protected activity.**

Even if Plaintiff established she engaged in protected activity when she reported alleged violations of HIPAA,[5] Defendant asserts Plaintiff cannot establish a causal connection between her complaints and her removal from the Admin team, the drafting of the CAP, or her termination.

A plaintiff can establish a causal connection between her protected activity and the adverse employment action "(1) *indirectly*, by showing that the protected activity was followed closely by discriminatory treatment or through other

---

[4] This statute was renumbered to § 659A.230 in 2001.

[5] As noted, to the extent that Plaintiff's whistleblower claims are based on Plaintiff's March 2012 appeal to UHG of the denial of her benefits, her contact with the DOL regarding the denial of her benefits, and her July 2012 second-level appeal to UHG of the denial of her benefits, those portions of her claims are preempted by ERISA.

evidence such as disparate treatment of fellow employees who engaged in similar conduct, or (2) *directly*, through evidence of retaliatory animus directed against a plaintiff by the defendant." *Boynton-Burns v. Univ. of Or.*, 197 Or. App. 373, 380-81 (2005)(emphasis in original, quotation omitted).

Plaintiff alleges Defendant removed her from the Admin team, Defendant terminated her, and Kauppila and Zaniewski drafted the CAP in retaliation for (1) Plaintiff's report on August 6, 2012, that A.J. had given her work computer user name and password to a neighbor and had allowed the neighbor to use her work computer; (2) Plaintiff's report that on March 27, 2013, Sedgwick left her medical records on her doorstep; and (3) Plaintiff's filing of a BOLI complaint on July 29, 2013, in which she alleged UHG retaliated against her for reporting HIPAA violations.  Plaintiff relies on the temporal proximity between her alleged protected activities and the adverse employment actions to establish a causal connection.

### 1.    Plaintiff's removal from the Admin team.

It is undisputed that during the August 6, 2012, meeting with Kauppila, Plaintiff told Kauppila that A.J. had given her work computer user name and password to a neighbor and had allowed the neighbor to use her work computer.  Plaintiff believed A.J.'s conduct was a violation of HIPAA.  The record, however, reflects Plaintiff reported the alleged violation for

26 - OPINION AND ORDER

the first time after Kauppila decided to remove Plaintiff from
the Admin team.  Specifically, Plaintiff testified at deposition
that she did not advise management about A.J.'s actions before
the August 6, 2012, meeting because she "didn't want to see
anything happen to [A.J.] in a negative way."  Fredrickson Decl.,
Ex. A at 12.

Because the record reflects Kauppila made the
decision to remove Plaintiff from the Admin team before Plaintiff
made any report of A.J.'s alleged HIPAA violation, the Court
concludes Plaintiff has not established a causal connection
between her removal from the Admin team and her report of A.J.'s
alleged HIPAA violation.

**2.    Plaintiff's termination**.

Plaintiff relies on the temporal proximity of her
April 2014 termination and the August 2012 draft CAP, her March
2013 complaint that Sedgwick violated HIPAA, and her July 2013
report to the DOL to establish a causal connection between her
termination and her reports of the alleged HIPAA violations.

Courts have made clear that when a plaintiff
"attempts to establish the causal connection indirectly, relying
on mere temporal proximity between the events, the events must be
'very close' in time."  *Boynton-Burns*, 197 Or. App. at 381
(citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273
(2001)).  For example, in *Miller v. Clark County School District*

27 - OPINION AND ORDER

the Ninth Circuit held the plaintiff failed to establish that a
genuine dispute of material fact existed as to whether his
protected conduct was a motivating factor in his termination
based on the temporal proximity of his engagement in the
allegedly protected activity and his termination for
insubordination "more than a month" later.  378 F. App'x 623, 626
(9ᵗʰ Cir. 2010).  Similarly, in *Swan v. Bank of America* the Ninth
Circuit concluded the plaintiff could not establish her
termination was "causally related" to her medical leave because
the defendant terminated her "four months after her return from
leave, which is too remote in time to support a finding of
causation premised solely on temporal proximity."  360 F. App'x
903, 906 (9ᵗʰ Cir. 2009)(citing *Breeden*, 532 U.S. at 273).  In
several cases district courts in the Ninth Circuit have concluded
that seven to nine months between the protected activity and the
adverse action does not constitute sufficient temporal proximity
to establish a causal connection.  *See, e.g., Anderson v. City
and County of San Francisco*, 169 F. Supp. 2d 995, 1028 (N.D. Cal.
Mar. 14, 2106) (seven months is insufficient); *Santa Ana Police
Officers Ass'n v. City of Santa Ana*, No: SA CV 15-1280-DOC(DFMx),
2016 WL 827750, at *12 (C.D. Cal. Mar. 2, 2016)(eight months is
insufficient).

          The time between Plaintiff's April 2014
termination and her August 2012 complaint that A.J. violated

HIPAA was more than 19 months, the time between Plaintiff's April 2014 termination and her March 2013 complaint that Sedgwick violated HIPAA is 13 months, and the time between Plaintiff's termination and her July 2013 DOL complaint is eight months. Plaintiff's termination, therefore, did not occur "very close" in time to Plaintiff's allegedly protected activities.

On this record the Court concludes Plaintiff has failed to establish a causal connection between her termination and any of her allegedly protected activities.

**3.    Drafting of the CAP**.

As noted, on August 30, 2012, Kauppila and Zaniewski drafted a CAP that provided Plaintiff with 90 days to improve her performance.  It is undisputed that Kauppila and Zaniewski never delivered or presented the CAP to Plaintiff.

Plaintiff alleges Kauppila and Zaniewski drafted the CAP in retaliation for Plaintiff's August 6, 2012, report that A.J. violated HIPAA.  Plaintiff relies on the temporal proximity of the drafting of the CAP to her August 6, 2012, HIPAA violation report to establish a causal connection.  The record reflects Kauppila and Zaniewski drafted the CAP on August 30, 2012, which was approximately three weeks after Plaintiff reported A.J.'s alleged HIPAA violation.  The Court finds three weeks is sufficiently close in time to support a *prima facie* finding of causality.

29 - OPINION AND ORDER

Defendant asserts the draft CAP is not an adverse employment action, and, therefore, Plaintiff has not established a *prima facie* case of retaliation.  Defendant also asserts even if Plaintiff established a *prima facie* case of retaliation, Defendant has a legitimate, nondiscriminatory reason for drafting the CAP.

As noted, Kauppila and Zaniewski never provided or presented the CAP to Plaintiff.  In addition, the record does not reflect there were any tangible employment effects on Plaintiff as a result of the draft CAP.  In fact, Plaintiff testified at deposition that "there was no corrective action plan" before she left on medical leave on August 29, 2012.  Fredrickson Decl., Ex. A at 9.  Thus, there is not any indication that the CAP draft of which Plaintiff was unaware and which did not result in any tangible employment harm "might well have dissuaded a reasonable [person] from making . . . a charge" of HIPAA violation.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 868 (9th Cir. 2014).

On this record the Court, therefore, concludes the drafting of the CAP was not an adverse employment action.  *See, e.g., Pasco v. Mentor Graphics Corp*, 199 F. Supp. 2d 1034, 1054 (D. Or. 2001)("A negative performance evaluation . . . that does not remain in the employee's file or result in some other tangible employment harm is not an adverse employment action.")

30 - OPINION AND ORDER

(citing *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1112–13 (9th
Cir. 2000)).  Plaintiff, therefore, has not established a *prima
facie* case of retaliation based on the CAP.

Even if Plaintiff had established a *prima facie*
case of retaliation based on the draft CAP, Defendant, as noted,
asserts it had a legitimate, nondiscriminatory reason for
drafting the CAP.  Specifically, Defendant asserts Kauppila and
Zaniewski drafted the CAP after Kauppila observed Plaintiff
struggled to complete her daily work and heard reports from
Plaintiff's coworkers that they were frustrated with Plaintiff's
unnecessarily long emails, that Plaintiff was difficult to work
with, and that they did not want to be partnered with Plaintiff
because they felt they were doing the majority of the work.

On this record the Court concludes Defendant has
provided a legitimate, nondiscriminatory reason for drafting the
CAP.  The burden, therefore, shifts back to Plaintiff to prove
the reason given by Defendant for drafting the CAP was
pretextual.

To establish pretext Plaintiff must either raise
an issue of fact as to whether Defendant's legitimate,
nondiscriminatory reason is genuine or introduce direct evidence
of a discriminatory motive.  *See Villiarimo*, 281 F.3d at 1063.
As noted, temporal proximity alone is insufficient to establish
evidence of pretext.  *Ventura*, 2010 WL 3767882, at *10.  *See also*

31 - OPINION AND ORDER

*Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)(although the temporal proximity of an adverse employment action to an employee's protected behavior may suffice to support a "minimal *prima facie* case of retaliation," it is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question" of retaliation).  Plaintiff does not identify any nonspeculative evidence to establish that Defendant's stated legitimate, nondiscriminatory reason for drafting the CAP is pretextual.  The record contains emails from Plaintiff's coworkers in which they complained about Plaintiff's performance and communications.  The record also includes memoranda and emails from Plaintiff's managers in which they express concerns about Plaintiff's performance and complaints from Plaintiff's coworkers.  Plaintiff testified in her deposition that several of her coworkers criticized her performance.  Fredrickson Decl., Ex. A at 15-17.  Viewing the evidence in the light most favorable to Plaintiff, the Court concludes Plaintiff has not established Defendant's stated legitimate, nondiscriminatory reason for drafting the CAP was pretextual.

On this record the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to Plaintiff's Second and Third Claims for retaliation.  Accordingly, the Court grants Defendant's Motion for Summary

32 - OPINION AND ORDER

Judgment as to those claims.

## IV. Plaintiff's Fourth Claim for Wrongful Termination

In her Fourth Claim Plaintiff alleges Defendant terminated her in substantial part for her "good faith reports of violations of federal law and her filing of a BOLI complaint." Compl. at ¶ 41. Defendant moves for summary judgment on the grounds that Plaintiff cannot bring a wrongful-termination claim because she has adequate statutory remedies and she has not established she was terminated because of her reports of violations of federal law or for filing a BOLI complaint.

### A. Standards

Under Oregon law an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement. *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 140 (2004). The tort of wrongful discharge is a narrow exception to this general rule. *Dew v. City of Scappoose*, 208 Or. App. 121, 140 (2006). The tort of wrongful discharge was not intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available. *Reddy v. Cascade Gen., Inc.*, 227 Or. App. 559, 567 (2009)(citation omitted). Oregon courts have recognized two circumstances that give rise to the common-law tort of wrongful discharge: (1) discharge for exercising a job-related

33 - OPINION AND ORDER

right of important public interest and (2) discharge for
complying with a public duty.

**B.   Plaintiff's wrongful-termination claim related to
      Oregon Revised Statute § 659A.199**

Defendant contends Plaintiff may not bring a claim for
wrongful termination related to her reports of alleged violations
of federal law because Oregon Revised Statute § 659A.199 provides
an adequate statutory remedy.  *See, e.g., Shaw v. Action Fin.
Svcs. LLC.*, No. 1:14-CV-00469-CL, 2014 WL 4404961, at *3
(Sept. 5, 2014)("ORS § 659A.199 provides an adequate (if not
better) remedy than a wrongful termination claim.  Thus, Shaw's
claim that AFS violated ORS § 659A.199 by retaliating against
Shaw for Shaw's report of alleged discrimination against him
precludes a common law wrongful termination claim based on the
same conduct."); *Shapiro v. Am. Bank. [FSB]*, No. 3:12-cv-1358-AC,
2013 WL 6157266, at *4 (Nov. 21, 2013)(same); *Franklin v. Clarke*,
No. 10-00382-CL, 2011 WL 4024638, at *11 (D. Or. Sept. 9, 2011)
(same); *Duran v. Window Prods., Inc.*, CV No. 10-125-ST, 2011 WL
1261190, at *2-3 (D. Or. Mar. 29, 2011)(same).  *But see Krouse v.
Ply Gem Pac. Windows Corp.*, No. 10-111-HA, 2011 WL 2971774, at *8
(D. Or. July 19, 2011)(holding the plaintiff's wrongful-discharge
claim was not precluded by § 659A.199).

In *Duran* the court thoroughly analyzed whether Oregon
Revised Statute § 659A.199 provides an adequate statutory remedy.
In that case the plaintiff brought a claim under § 659A.199 and a

34 - OPINION AND ORDER

claim for wrongful termination.   In bringing her wrongful-
termination claim, the plaintiff relied on *Olsen v. Deschutes
Cty.*, 204 Or. App. 7 (2006), in which the Oregon Court of Appeals
addressed whether the court should dismiss the plaintiffs'
wrongful-termination claim because the plaintiffs had the option
of pursuing adequate statutory remedies under § 659.510
(renumbered § 659A.203) of Oregon's whistleblower statute.
*Duran*, 2011 WL 1261190, at *4.   The Oregon Court of Appeals
concluded the fact that the statutory remedies were adequate was
insufficient standing alone because the legislature stated
explicitly in the text of the statute that the remedies were not
intended to restrict or to impair any existing common-law
remedies.   The plaintiff in *Duran* contended even though the
statutory remedies under § 659A.199 were adequate, the
legislature specifically provided in § 659A.199(2) that the
remedies are "in addition to any common law remedy . . . for the
conduct constituting a violation of this section," and,
therefore, the plaintiff's wrongful-termination claim was not
precluded by § 659A.199 under *Olsen*.   The court, however,
rejected the plaintiff's argument.   Although the court conceded
the language of § 659A.199(2) in conjunction with the holding in
*Olsen* appears to suggest that the plaintiff's wrongful-
termination claim was not precluded, the court noted two grounds
for declining to follow the reasoning in *Olsen*:

35 - OPINION AND ORDER

First, *Olsen* interprets Oregon Supreme Court precedent in this area in a manner that the [Oregon] [S]upreme [C]ourt itself has not expressly articulated and which is arguably contrary to that higher court's still-controlling holdings on this point.  In fact, the Oregon Supreme Court has never expressly overruled or even clarified its prior decisions to mean what *Olsen* holds.  Second, the requirement that clear legislative intent always be present before a wrongful discharge claim is precluded — that an adequate statutory remedy by itself is not enough — necessarily expands the tort of wrongful discharge into areas where legislation already has given the claimant an adequate remedy and the public's interest is protected.  Such expansion is clearly at odds with the tort's original construct, "to fill a remedial gap where a discharge would be left unvindicated," *Dunwoody v. Handskill Corp.*, 60 P.3d 1135, 1139 (Or. Ct. App. 2003), and its original purpose to "serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper*, 995 F. Supp. at 1129.  Put another way, *Olsen*'s holding at least enlarges the availability of the tort in ways that the Oregon Supreme Court did not contemplate when it created the tort and has not expressly approved since, thus potentially converting the tort from being a narrow exception to the general rule to the general rule itself.

2011 WL 1261190, at *3 (quoting *Reid v. Evergreen Aviation Ground Logistics Enter., Inc.*, Civil No. 07-1641-AC, 2009 WL 136019, at *15-20 (D. Or. Jan. 20, 2009)).

This Court has previously adopted the reasoning set out in *Duran* and continues to do so here.  *See, e.g.*, Findings and Recommendation of Dennis James Hubel, M.J. (adopted on June 24, 2008, by Brown, J.), *James v. Evergreen Intern. Airlines, Inc.*, No. 07-CV-1640-HU, 2008 WL 2564804, at *5 (D. Or. June 23, 2008) ("[The plaintiff] argues that the test used in *Draper* to

36 - OPINION AND ORDER

determine whether an alternate remedy exists requires a showing that an alternate adequate remedy exists and that the legislature intended the remedy to supersede common law remedies.  [The plaintiff] is incorrect.  The test is a disjunctive one in which a wrongful termination claim is precluded if the alternate remedy is adequate or if the legislature intended the remedy to supersede common law remedies.").  Thus, the Court concludes the presence of an adequate statutory remedy precludes a claim for wrongful termination that is based on the same conduct.

On this record the Court concludes Plaintiff's wrongful-termination claim is precluded to the extent that her claim is based on the conduct that underlies her claim for violation of § 659A.199.  The Court, therefore, grants Defendant's Motion for Summary Judgment as to the portion of Plaintiff's claim for wrongful termination based on the conduct that underlies her claim for violation of § 659A.199.

## C.   Plaintiff's wrongful-termination claim related to Oregon Revised Statute § 659A.230.

Defendant contends Plaintiff may not bring a claim for wrongful termination related to her BOLI report because Oregon Revised Statute § 659A.230 provides an adequate statutory remedy.

Courts in this district have held § 659A.230 provides an adequate statutory remedy, which precludes a claim for wrongful termination.  *See, e.g., Shapiro,* 2013 WL 6157266, at

37 - OPINION AND ORDER

*5; *Franklin,* 2011 WL 4024638, at *11 (D. Or. Sept. 9, 2011)
(same); *Duran*, 2011 WL 1261190, at *4.  The Court adopts the
reasoning of these cases and concludes Plaintiff's wrongful-
termination claim based on her BOLI report is precluded because
§ 659A.230 provides an adequate statutory remedy.

      Accordingly, the Court grants Defendant's Motion for
Summary Judgment as to Plaintiff's wrongful-termination claim.


<u>**CONCLUSION**</u>

      For these reasons, the Court **GRANTS** Defendant's Motion (#87)
for Summary Judgment and **DISMISSES** this matter **with prejudice**.

      IT IS SO ORDERED.

      DATED this 1st day of November, 2016.


                     /s/ Anna J. Brown

                    _____
                    ANNA J. BROWN
                    United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SUSAN HUITT,                              3:14-CV-01064-BR

       Plaintiff,                      OPINION AND ORDER

v.

OPTUM HEALTH SERVICES, a
wholly-owned subsidiary of
UNITED HEALTH GROUP, INC.,

       Defendant.


SUSAN HUITT
16617 S.E. Naegeli Drive
Portland, OR 97236
(503) 465-6639

       Plaintiff, *Pro Se*

SARAH J. RYAN
APRIL L. UPCHURCH FREDRICKSON
Jackson Lewis PC
1001 S.W. Fifth Avenue
Suite 1205
Portland, OR 97204
(503) 345-4162

       Attorneys for Defendants


1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on the Motion (#87) for Summary Judgment of Defendant Optum Health Services.[1]  For the reasons that follow, the Court **GRANTS** Defendant's Motion.


## BACKGROUND

The following facts are taken from the parties' summary-judgment materials and are undisputed unless otherwise noted.

Defendant employed Plaintiff Susan Huitt as a WorkLife Resource & Referral Consultant (RRC) from October 2005 through April 2014.  RRCs are "responsible for providing [United Health Group] UHG[2] members who call into the Employee Assistance Program [with] three different referrals for various services in their local area."  Decl. of Mary Kauppila at ¶¶ 3-4.  RRCs are required to "complete a minimum number of searches per week in a timely manner."  *Id*.  At some point Plaintiff "[took] on, in addition to her regular responsibilities, the task of working on the 'Admin' team."  Kauppila Decl. at ¶ 5.

In October 2011 Plaintiff began receiving treatment for various medical conditions.  Plaintiff's medical benefits were

---

[1] Defendant notes in its Motion that its correct entity name is Optum Health Services rather than Optumhealth as it appears in Plaintiff's Complaint.  The Court, therefore, directs the Clerk of Court to correct the docket accordingly.

[2] Defendant is a wholly-owned subsidiary of United HealthGroup (UHG).

2 - OPINION AND ORDER

provided by UHG.

Plaintiff reported to WorkLife Resource and Referral Supervisor Erin Cochrun from 2005 through November 2011.  Cochrun left Optum in November 2011, and Plaintiff then began reporting to WorkLife Resource and Referral Supervisor Mary Kauppila.

Kauppila testifies in her Declaration that after she had supervised Plaintiff for several months, she was notified by some of Plaintiff's coworkers that Plaintiff completed the number of searches required by Defendant's metrics, but "often took more time than her teammates to complete searches and often worked late to get searches completed."  Kauppila Decl. at ¶ 6. Plaintiff's coworkers also reported Plaintiff was unable to complete her work for the Admin team.

In February 2012 Kauppila began discussing her concerns about Plaintiff's job performance with Plaintiff in their monthly one-on-one meetings.

From February 2012 to August 2012 Kauppila received further reports from Plaintiff's coworkers who "complain[ed] about being partnered with [Plaintiff] because they felt they were doing the majority of the work . . . [and Plaintiff] had difficulty communicating with team members and with Kauppila and would send unnecessarily lengthy emails."  Kauppila Decl. at ¶ 8.

In February 2012 UHG denied Plaintiff's request for reimbursement for "certain treatment" that she had been receiving

3 - OPINION AND ORDER

since October 2011.  In March 2012 Plaintiff appealed the denial
of treatment to UHG.  Plaintiff also contacted the United States
Department of Labor (DOL) regarding the denial of treatment.  At
some point Plaintiff, a DOL employee, and a representative from
UHG participated in a conference call regarding the denial of
Plaintiff's treatment.  Kauppila was not involved in the denial
of Plaintiff's treatment and was not aware of the conference call
until August 6, 2012.

On July 22, 2012, Plaintiff submitted a second-level appeal
to UHG regarding the denial of benefits.  Kauppila was unaware of
Plaintiff's second-level appeal until August 6, 2012.

In August 2012 Kauppila and the manager of the Resource &
Referral Team, Sarah Zaniewski, concluded the added responsi-
bilities of the Admin team were too much for Plaintiff in
combination with her job duties.  Accordingly, on August 6, 2012,
Kauppila met with Plaintiff and explained to her that Kauppila
had noticed Plaintiff was unable to keep up with her regular
duties in a regular work day.  Kauppila also told Plaintiff that
she had received complaints from some of Plaintiff's coworkers,
including A.J., who did not want to be partnered with Plaintiff.
Kauppila then informed Plaintiff that she was being removed from
the Admin team.  Plaintiff did not suffer any decrease in
compensation or benefits as a result of being removed from the
Admin team nor was she given more burdensome work.  In fact, her

4 - OPINION AND ORDER

essential job duties remained the same.

During the August 6, 2012, meeting but after Kauppila informed Plaintiff that she was being removed from the Admin team and that A.J. had complained about her, Plaintiff told Kauppila that A.J. had given her work computer user name and password to a neighbor and had allowed the neighbor to use her work computer. Plaintiff believed A.J.'s actions violated the Health Insurance Portability and Accountability Act (HIPAA). Plaintiff testified at deposition that she did not advise Kauppila or other managers about A.J.'s actions before the August 6, 2012, meeting because she "didn't want to see anything happen to [A.J.] in a negative way." Decl. of April Upchurch Fredrickson, Ex. A at 12. Kauppila advised Zaniewski about Plaintiff's allegation against A.J.

Zaniewski consulted with Defendant's Human Resources Department (HRDirect), which advised her to speak with A.J. directly about Plaintiff's allegation. When Zaniewski spoke with A.J., A.J. denied Plaintiff's allegation and clarified she had permitted her neighbor to use her home computer rather than her work computer. Zaniewski and HRDirect ultimately concluded Plaintiff's allegation could not be substantiated and that further steps to address the issue were not required.

On August 22, 2012, Plaintiff asked Kauppila for a written explanation for her removal from the Admin team. Kauppila

5 - OPINION AND ORDER

responded with a memorandum in which she noted:

> Several people on the Admin team have direct
> feedback to me about [Plaintiff's] performance
> when they were partnered with her on Admin.  They
> felt that when they were partnered with
> [Plaintiff] that the burden for the Admin work was
> not shared.  They did not experience the same
> partnership and delegating of responsibilities
> that they did with other Admin team members and
> they "dreaded" being partnered with her.  They
> stated that they would ask [Plaintiff] if she
> could assist with some part of the Admin
> responsibilities and she provided a "reason" or an
> "excuse" for why she was unable to help.  Several
> said they simply stopped asking or providing
> feedback because they got tired of always hearing
> a reason for why she was not available to help.
>
> The other late Admin team members also stated that
> when [Plaintiff] was on Admin they would often
> have to stay late to make sure all of their
> responsibilities were completed and that did not
> happen when they were partnered with other people.
>
> [Plaintiff] became overwhelmed at times with
> managing the demands of Admin in addition to her
> other daily responsibilities as an RRC including
> not responding in a timely manner to emails or not
> responding at all and not completing her self
> assignment in a timely manner.
>
> There was also a concern with [Plaintiff's] email
> communications related to Admin.  [Plaintiff] was
> taking too much time out of her day creating her
> communications and her team mates and management
> were taking too much time deciphering
> [Plaintiff's] communications because they were
> lengthy and confusing.  I also experienced having
> to re-hash the same issue with [Plaintiff] and had
> to ask her to be willing to put things behind her
> once they have been discussed because an
> inordinate amount of time was spent discussing the
> same issue which was causing frustration and
> again, taking too much time out of our day.

Kauppila Decl., Ex. G.

6 – OPINION AND ORDER

Defendant alleges Plaintiff's performance failed to improve. On August 26, 2012, Kauppila and Zaniewski drafted an interim review for Plaintiff that included a rating of "needs improvement." Kauppila and Zaniewski asked Plaintiff to complete a self-evaluation in order to assess and to discuss Plaintiff's interim review. Plaintiff, however, never completed her self-evaluation.

On August 29, 2012, Plaintiff was off from work sick.

On August 30, 2012, Kauppila and Zaniewski drafted a Corrective Action Plan (CAP) that provided Plaintiff with 90 days to improve her performance.

On August 30, 2012, before Kauppila and Zaniewski were able to meet with Plaintiff or to present her with her interim review of CAP, Plaintiff emailed Kauppila and Zaniewski and advised them that her doctor had placed her on short-term disability leave due to her "serious medical condition," that she would be on leave longer than five days, and that she would be filing a claim for short-term disability benefits through Sedgwick (UHG's third-party administrator of short-term disability). Plaintiff then began a leave of absence under the Family Medical Leave Act (FMLA).

Plaintiff did not return to work after August 29, 2012, and exhausted her FMLA leave by October 31, 2012. After October 31, 2012, Plaintiff was on a leave of absence without pay until

7 - OPINION AND ORDER

April 2, 2014, at which point Defendant terminated Plaintiff's employment because she could not return to work.

In March 2013 while Plaintiff was on her leave of absence, she registered a complaint with HRDirect alleging Sedgwick violated HIPAA when it left a copy of Plaintiff's medical records unattended on her front doorstep. HRDirect investigated and in October 2013 determined Plaintiff's complaint was "without merit." Fredrickson Decl., Ex. H at 2.

On July 29, 2013, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) in which she alleged Defendant: (1) violated Oregon Revised Statute § 659A.199 when it subjected her to "a hostile working environment and discriminatory treatment" after she reported to Defendant what Plaintiff "believed were possible violations of HIPPA [sic] and other privacy laws by certain other employees" and (2) violated Oregon Revised Statute § 659A.112 when it subjected her to "a hostile working environment due in substantial part because [she] has a disability and require[s] reasonable accommodation to [her] disability." Fredrickson Decl., Ex J at 2.

On March 13, 2014, Defendant sent Plaintiff a letter in which it advised:

> On August 29, 2012 you began a leave of absence. Your leave under the Family and Medical Leave Act (FMLA) was exhausted on October 31, 2012.
>
> You have now been on leave for over 18 months, and as of the date of this letter, you have not been

8 - OPINION AND ORDER

> released to return to work (with or without
> accommodations).  Further, the medical
> documentation submitted by your health care
> provider does not list any anticipated date on
> which you will be able to return to work with or
> without accommodation(s).  Therefore, UHG has
> determined that your employment will be
> administratively terminated effective April 2,
> 2014.

Fredrickson Decl., Ex. G at 1.

On June 2, 2014, Plaintiff filed a *pro se* complaint in Multnomah County Circuit Court against Defendant and asserted claims for disability discrimination in violation of Oregon Revised Statute § 659A.112, whistleblower retaliation in violation of Oregon Revised Statutes §§ 659A.199 and 659A.230, and wrongful termination.

On July 2, 2014, Defendant removed the matter to this Court on the basis of diversity and federal-question jurisdiction.

On August 8, 2016, Defendant filed a Motion for Summary Judgment.

On August 10, 2016, the Court issued a Summary Judgment Advice Notice to Plaintiff advising her that if she did not submit evidence in opposition to Defendant's Motion, summary judgment could be entered against her.

The Court took Defendant's Motion under advisement on October 6, 2016.

## **<u>STANDARDS</u>**

Summary judgment is appropriate when "there is no genuine

9 - OPINION AND ORDER

dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id.*  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a

material fact exists "will not preclude the grant of summary
judgment." *Deering v. Lassen Cmty. Coll. Dist.,* No. 2:07-CV-
1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)
(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.
1989)).  When the nonmoving party's claims are factually
implausible, that party must "come forward with more persuasive
evidence than otherwise would be necessary." *LVRC Holdings LLC
v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense
determines whether a fact is material. *Miller v. Glenn Miller
Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the
resolution of a factual dispute would not affect the outcome of
the claim, the court may grant summary judgment. *Id*.


### DISCUSSION

Defendant moves for summary judgment on all of Plaintiff's
claims.

## I.  Plaintiff's First Claim against Defendant for disability discrimination in violation of Oregon Revised Statute § 659A.112.

Plaintiff alleges in her First Claim that she has a
disability as defined by Oregon Revised Statute § 659A.104(1)(a)
that substantially limits her ability to perform major life
activities, that she was a qualified individual with a
disability, that she was able to perform the essential functions

11 - OPINION AND ORDER

of her job with or without reasonable accommodation, and that
Defendant discriminated against her by "creating a hostile work
environment because of [her] disability."  Compl. at ¶ 23.
Plaintiff also alleges she was subject to adverse employment
actions when Defendant removed her from the Admin team and when
it terminated her employment.

Defendant moves for summary judgment on the grounds that
Plaintiff did not suffer an adverse employment action when
Defendant removed her from the Admin team, that Plaintiff has not
established she was removed from the Admin team because of her
disability, that Plaintiff was not a qualified individual with a
disability at the time of her termination, and that Plaintiff's
termination was not an adverse employment action.

**A.    Oregon disability discrimination standards.**

Oregon Revised Statute § 659A.112(1) provides:  "It is
an unlawful employment practice for any employer to . . .
discharge from employment or to discriminate in compensation or
in terms, conditions or privileges of employment on the basis of
disability."

To establish a *prima facie* case of discrimination under
§ 659A.112 the plaintiff must show:  (1) she is a qualified
individual with a disability, (2) she suffered an adverse
employment action, and (3) there was a causal connection between
the adverse employment action and her disability.  *Rogers v.*

*Oregon Trail Elec. Consumers Co-op., Inc.,* No. 3:10-CV-1337-AC, 2012 WL 1635127, at *22 (D. Or. May 8, 2012)(citing *Hutton v. Elf Atochem N. Am. Inc.*, 273 F.3d 884, 891 (9th Cir. 2001)). *See also Wessels v. Moore Excavation, Inc.*, No. 3:14-cv-01329-HZ, 2016 WL 1589894, at *3 (D. Or. Apr. 18, 2016)(same). The proof required at the *prima facie* stage "'is minimal and does not even need to rise to the level of a preponderance of evidence.'" *Rogers*, 2012 WL 1635127, at *22 (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Wessels*, 2016 WL 1589894, at *3 (citing *Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (9th Cir. 2014)).

If the defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to the plaintiff to prove the reason given by the defendant was pretextual. To establish pretext the plaintiff must either raise an issue of fact as to whether the defendant's legitimate, nondiscriminatory reason is genuine or introduce direct evidence of a discriminatory motive. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002). *See also Tyson v. Or. Anesthesiology Group, P.C.*, No. 03-CV-1192-HA, 2008 WL 2371420, at *5 (D. Or. June 6, 2008). Temporal proximity alone is

insufficient to create evidence of pretext.  *Ventura v. Johnson Controls, Inc.*, Nos. 08-CV-1318-PK, 09-CV-190-PK, 2010 WL 3767882, at *10 (D. Or. Sept. 16, 2010)(quoting *Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)(although the temporal proximity of an adverse employment action to an employee's protected behavior may suffice to support a "minimal *prima facie* case of retaliation," it is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question" of retaliation).

### B.  Plaintiff did not suffer an adverse employment action when Defendant removed her from the Admin team.

As noted, Plaintiff alleges Defendant discriminated against her because of her disability when it removed her from the Admin team.  Defendant, however, contends Plaintiff's removal from the Admin team does not constitute an adverse employment action because her removal did not result in any reduction in compensation or any negative effects in her terms of employment or employment conditions.

" 'An adverse employment action is one that materially affects the terms, conditions, or privileges of the plaintiff's employment.'"  *Redwind v. Western Union, LLC*, No. 3:14-cv-01699-AC, 2016 WL 3606595, at *12 (D. Or. May 2, 2016)(quoting *Ray v. Henderson*, 217 F.3d 1234, 1242 (9th Cir. 2000)).  "Among those employment actions that may qualify as adverse are termination, demotion, suspension, removal of job

14 – OPINION AND ORDER

responsibilities, imposition of more burdensome work activities, overtime, reduction in salary or benefits, and substantial interference with work facilities that are key to job performance." *Leighton v. Three Rivers School Dist.*, No. 1;12-cv-1275-CL, 2015 WL 272894, at *7 (D. Or. Jan. 20, 2105)(citing *Kang v. U. Lim Am., Inc.*, 296 F.3d 810, 818-19 (9th Cir. 2002)(the plaintiff established a *prima facie* case of disparate treatment when the defendant subjected the plaintiff to overtime and termination "that constituted a material change in the terms and conditions of [the plaintiffs] employment."). *See also Chuang v. Univ. of Cal. Davis, Bel. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000)("[T]he removal of or substantial interference with work facilities important to the performance of the job constitutes a material change in the terms and conditions of a person's employment," and, therefore, qualifies as an adverse employment action); *Kortan v. Ca. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000)(no adverse employment action when the plaintiff was not demoted, given different or more burdensome work, fired or suspended, denied any raises, or suffered a reduction in salary or any other benefit).

The record reflects Plaintiff did not suffer any decrease in compensation or benefits nor was she given more burdensome work responsibilities as a result of being removed from the Admin team. In fact, the record does not reflect

15 - OPINION AND ORDER

Plaintiff suffered any negative effects in her RRC job as a result of her removal from the Admin team.

On this record the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to whether removal from the Admin team constituted an adverse employment action.  Because Plaintiff cannot establish all the elements of her First Claim for disability discrimination, the Court grants Defendant summary judgment on Plaintiff's First Claim for disability discrimination based on her removal from the Admin team.

### C.    Plaintiff was not a qualified individual with a disability at the time of her termination.

Plaintiff alleges Defendant violated Oregon Revised Statute § 659A.112(1) when it terminated her because of her disability.  Defendant, however, asserts Plaintiff was not a qualified individual with a disability from September 2012 to the time of her termination effective April 2, 2014.  Plaintiff, therefore, cannot establish all the elements of a claim for disability discrimination related to her termination.

As noted, in order to establish a *prima facie* case of discrimination under § 659A.112 Plaintiff must show, among other things, that she was a qualified individual with a disability at the time of termination.  Under § 659A.112 a qualified individual with a disability is one who can perform the essential functions of the job with or without reasonable accommodation.

16 – OPINION AND ORDER

"Determining whether Plaintiff is a 'qualified individual' requires the Court to consider whether Plaintiff was able to perform the essential functions of the . . . position at the time of [her] termination *without* accommodation, and then, if [she] cannot, whether [s]he was able to do so *with* reasonable accommodation." *Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-cv-01740-HU, 2014 WL 585376, at *14 (D. Or. Feb. 13. 2014)(emphasis in original)(citing *Dark v. Curry County*, 451 F.3d 1078, 1086 (9th Cir. 2006)).  If Plaintiff could not perform the essential functions of the position with a reasonable accommodation, § 659A.112 does not apply.  *See Cripe v. City of San Jose*, 261 F.3d 877, 884-85 (9th Cir. 2001).

The record reflects Plaintiff was unable to perform the essential functions of her RRC job with or without reasonable accommodation after she went on medical leave on August 30, 2012, through her termination in April 2014.  Moreover, Plaintiff testified at deposition that "starting in September of 2012 [she could not] have performed the central functions of [her] job with or without accommodation," and she remained unable to do so up to and after the date of her termination letter on March 13, 2014. Fredrickson Decl., Ex. A at 29, 37.  In fact, Plaintiff took medical leave on August 30, 2012, and never returned to her job with Defendant or took any other job.

The Court concludes in the face of Defendant's Motion

Plaintiff has not established a genuine dispute of material fact exists as to whether she was a qualified individual with a disability at the time of her termination.  Accordingly, with a failure of proof as to that material element, Plaintiff's First Claim for disability discrimination in violation of § 659A.112 fails, and, therefore, the Court grants Defendant's Motion for Summary Judgment as to that claim.

## II.  Plaintiff's Second and Third Claims for whistleblower retaliation.

Plaintiff alleges in her Second Claim that her "multiple acts of reporting ERISA and HIPPA [*sic*] violations to defendant and to the Department of Labor, Employee Benefits Security Administration constituted a report of information plaintiff reasonably believed was evidence of a violation of federal law, rule, or regulation."  Compl. at ¶ 32.  Plaintiff alleges Defendant terminated her "in substantial part due to [her] report of a violation of law, rule, or regulation" and retaliated against her in violation of Oregon Revised Statute § 659A.199 "by creating a hostile work environment because of her reports of federal law violations."  Compl. at ¶¶ 33-34.

In her Third Claim Plaintiff alleges "Defendants engaged in the acts alleged [in her Complaint] for the reason that plaintiff commenced a complaint against defendant with BOLI" and "Defendants terminated plaintiff's employment in substantial part due to plaintiff's report of a violation of law, rule, or

18 – OPINION AND ORDER

regulation in violation of ORS 659A.230."  Compl. ¶¶ 38-39.

Defendant moves for summary judgment on Plaintiff's Second and Third Claims on the grounds that (1) to the extent Plaintiff alleges she was terminated or otherwise retaliated against for reporting an ERISA violation, her claims are preempted by ERISA; (2) Plaintiff cannot establish she engaged in a protected activity for purposes of her Third Claim; (3) Plaintiff cannot establish a causal link between her alleged protected activity and a cognizable employment action; and (4) Plaintiff did not suffer adverse employment actions when Defendant removed her from the Admin team and terminated her employment.

**A.   Whistleblower standards.**

Oregon Revised Statute § 659A.199(a) provides:

> It is an unlawful employment practice for an
> employer to discharge, demote, suspend or in any
> manner discriminate or retaliate against an
> employee . . . for the reason that the employee
> has in good faith reported information that the
> employee believes is evidence of a violation of a
> state or federal law, rule or regulation.

Oregon Revised Statute § 659A.230 provides:

> It is an unlawful employment practice for an
> employer to discharge, demote, suspend or in any
> manner discriminate or retaliate against an
> employee . . . for the reason that the employee
> has in good faith reported criminal activity by
> any person, has in good faith caused a . . .
> complaint to be filed against any person, . . .
> has in good faith brought a civil proceeding
> against an employer or has testified in good faith
> at a civil proceeding or criminal trial.

To survive summary judgment on a whistleblower claim

19 - OPINION AND ORDER

under §§ 659A.199 or 659A.230 a plaintiff must identify

> the existence of facts from which a reasonable
> fact finder could conclude . . . she engaged in
> protected activity . . . [and] defendant[]
> retaliated against her in response to that
> activity. . . . [I]f the employer asserts a
> non-discriminatory reason for the employee's
> termination, the plaintiff must show that the
> employer would not have made the same decision
> absent a discriminatory motive.

*Merrill v. M.I.T.C.H. Charter Sch. Tigard*, No. 10-CV-219-HA, 2011

WL 1457461, at *7 (D. Or. Apr. 4, 2011)(citations omitted). *See*

*also Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011)

(applies burden-shifting framework to state and federal claims).

    To establish a *prima facie* case of retaliation under

Oregon Revised Statutes §§ 659A.199 and 659A.230 the "[p]laintiff

'must show (1) she was engaging in a protected activity, (2) she

suffered an adverse employment decision, and (3) there was a

causal link between the protected activity and the adverse

employment decision.'" *Sandberg v. City of N. Plains*, No.

10-CV-1273-HZ, 2012 WL 602434, at *7 (D. Or. Feb. 22, 2012)

(quoting *Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782,

785 (9th Cir. 1986)).3  *See also Shultz v. Multnomah Cty.*,

No. 08-CV-886-BR, 2009 WL 1476689, at *13 (D. Or. May 27, 2009)

(same).

_____

    3 Courts have held "Title VII of the Civil Rights Act
generally provides guidance in interpreting the employment
discrimination provisions of O.R.S. 659A." *James v. Or.
Sandblasting & Coating, Inc.*, 2016 WL 5402218, at *2 n.1 (D. Or.
Sept. 25, 2016).

20 - OPINION AND ORDER

To establish causation the plaintiff must show her protected activity was a "'substantial factor in the motivation to discharge the employee.'" *Sandberg*, 2012 WL 602434, at *7 (quoting *Estes v. Lewis and Clark College,* 152 Or. App. 372, 381 (1998)). *See also Huff v. City of Portland*, Civ. No. 05-1831-AA, 2008 WL 1902760, at *6 (D. Or. Apr. 28, 2008)("Plaintiff bears the burden of establishing that her alleged disclosures constituted 'a substantial factor' in the discontinuation of her employment.").

If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to rebut the inference of retaliation by offering a legitimate, nondiscriminatory reason for the employee's termination.  If the defendant successfully rebuts the inference of retaliation, the burden shifts back to the plaintiff to show that the defendant's explanation is pretextual. *Neighorn v. Quest Health Care*, No. 1:10-CV-03105-CL, 2012 WL 1566176, at *28 (D. Or. May 2, 2012).

**B.    To the extent that Plaintiff alleges she was terminated or otherwise retaliated against for reporting ERISA violations, her claims are preempted by ERISA.**

As noted, Plaintiff alleges Defendant terminated her in substantial part because she reported ERISA violations to Defendant, to the Department of Labor, and/or to the Employee Benefits Security Administration.  Specifically, Plaintiff alleges in her Complaint that she "reported what she believed to

21 - OPINION AND ORDER

be violations of ERISA by filing an internal appeal with

defendant challenging its refusal to approve payment for

plaintiff's pain management therapy."  Compl. at ¶ 9.

### 1.    ERISA preemption standards.

In *Aetna Healthcare v. Davila* the Supreme Court

explained ERISA preemption as follows:

> Congress enacted ERISA to "protect . . . the
> interests of participants in employee benefit
> plans and their beneficiaries" by setting out
> substantive regulatory requirements for employee
> benefit plans and to "provid[e] for appropriate
> remedies, sanctions, and ready access to the
> Federal courts."  29 U.S.C. § 1001(b).  The
> purpose of ERISA is to provide a uniform
> regulatory regime over employee benefit plans.
> To this end, ERISA includes expansive pre-emption
> provisions, *see* ERISA § 514, 29 U.S.C. § 1144,
> which are intended to ensure that employee benefit
> plan regulation would be "exclusively a federal
> concern."  *Alessi v. Raybestos-Manhattan, Inc.*,
> 451 U.S. 504, 523 (1981).
>
> ERISA's "comprehensive legislative scheme"
> includes "an integrated system of procedures for
> enforcement."  *Russell*, 473 U.S., at 147 (internal
> quotation marks omitted).  This integrated
> enforcement mechanism, ERISA § 502(a), 29 U.S.C.
> § 1132(a), is a distinctive feature of ERISA.
>
>                         * * *
>
> Therefore, any state-law cause of action that
> duplicates, supplements, or supplants the ERISA
> civil enforcement remedy conflicts with the clear
> congressional intent to make the ERISA remedy
> exclusive and is therefore pre-empted.  *See* 481
> U.S. at 54-56; *see also Ingersoll-Rand Co. v.
> McClendon*, 498 U.S. 133, 143-145 (1990).

542 U.S. 200, 208 (2004).

ERISA's preemption provision provides ERISA shall

22 - OPINION AND ORDER

generally "supersede any and all State laws insofar as they may
now or hereafter relate to any employee benefit plan described in
section 1003(a) of this title and not exempt under section
1003(b) of this title."  29 U.S.C. § 1144(a).

ERISA bars employers from retaliating "against any
person because [s]he has given information . . . in any inquiry
or proceeding relating to" ERISA.  29 U.S.C. § 1140.  The Supreme
Court has held ERISA preemption applies when a plaintiff's state-
law claim falls within the purview of § 1144.  *Metro. Life Ins.
Co. v. Taylor,* 481 U.S. 58, 63-64 (1987).

## 2.   Analysis.

The Ninth Circuit has held claims alleging
retaliation or discrimination because of a plaintiff's report of
"concerns about 'potential and/or actual violations . . . of
ERISA'" are preempted by ERISA.  *See, e.g., Hashimoto v. Bank of
Haw.*, 999 F.2d 408, 411 (9th Cir. 1993)("[W]e hold the Hawaii
Whistle Blower's Act, to the extent an ERISA violation is
involved, [is] preempted by the specific provision of ERISA
protecting whistle blowers such as [the plaintiff].").  District
courts in the Ninth Circuit have also found state whistleblower
claims are preempted by ERISA.  *See, e.g., Perez v. Brain*, 2015
WL 3505249, at *11 (C.D. Cal. Jan. 30, 2015)("When read together
with the other allegations in the [second amended complaint],
. . . [the plaintiff] sufficiently pleads . . . a 'discharge' in

23 - OPINION AND ORDER

violation of" ERISA, and, therefore, the plaintiff's state-law claim is preempted by ERISA). *Compare Yoshimura v. Haw. Carpenters Union Local 745*, 2015 WL 6126805, at *4 (D. Haw. Oct. 15, 2015)(the plaintiff's state whistleblower claim was not preempted by ERISA because the plaintiff did not allege he made any reports of ERISA violations).

On this record the Court concludes to the extent that Plaintiff alleges she was terminated or otherwise retaliated against for reporting violations of ERISA, her claims are preempted by ERISA pursuant to *Hashimoto*.  The Court, therefore, grants Defendant's Motion for Summary Judgment as to Plaintiff's Second and Third Claims to the extent that they are based on Plaintiff's alleged termination for reporting violations of ERISA.

**C.    Plaintiff has not established she engaged in a protected activity for purposes of § 659A.230.**

Plaintiff alleges in her Third Claim that Defendant terminated her in retaliation for commencing a complaint with BOLI against Defendant.  Defendant, however, points out that Oregon courts have held § 659A.230 does not apply to protect individuals who have filed complaints with administrative agencies. *See, e.g., Huber v. Or. Dep't of Ed.*, 235 Or. App. 230, 238 (2010)("The critical flaw in plaintiff's position is that his complaint to the DHHS and threat to complain to the OSBN were administrative matters . . . and were therefore not

24 - OPINION AND ORDER

protected by ORS 659A.230."); *Mantia v. Hanson*, 190 Or. App. 36, 41 n.3 (2003) (the plaintiff's complaint about "allegedly unsafe work conditions and threat . . . to complain to Oregon occupational safety authorities about those conditions" was not protected by § 659.550[4]).

The Court, therefore, concludes on this record that Plaintiff has not established she engaged in activity protected by § 659A.230.

**D.   Plaintiff has not established a causal connection between the alleged adverse employment actions and her allegedly protected activity.**

Even if Plaintiff established she engaged in protected activity when she reported alleged violations of HIPAA,[5] Defendant asserts Plaintiff cannot establish a causal connection between her complaints and her removal from the Admin team, the drafting of the CAP, or her termination.

A plaintiff can establish a causal connection between her protected activity and the adverse employment action "(1) *indirectly*, by showing that the protected activity was followed closely by discriminatory treatment or through other

---

[4] This statute was renumbered to § 659A.230 in 2001.

[5] As noted, to the extent that Plaintiff's whistleblower claims are based on Plaintiff's March 2012 appeal to UHG of the denial of her benefits, her contact with the DOL regarding the denial of her benefits, and her July 2012 second-level appeal to UHG of the denial of her benefits, those portions of her claims are preempted by ERISA.

evidence such as disparate treatment of fellow employees who
engaged in similar conduct, or (2) *directly*, through evidence of
retaliatory animus directed against a plaintiff by the
defendant." *Boynton-Burns v. Univ. of Or.*, 197 Or. App. 373,
380-81 (2005)(emphasis in original, quotation omitted).

  Plaintiff alleges Defendant removed her from the Admin
team, Defendant terminated her, and Kauppila and Zaniewski
drafted the CAP in retaliation for (1) Plaintiff's report on
August 6, 2012, that A.J. had given her work computer user name
and password to a neighbor and had allowed the neighbor to use
her work computer; (2) Plaintiff's report that on March 27, 2013,
Sedgwick left her medical records on her doorstep; and
(3) Plaintiff's filing of a BOLI complaint on July 29, 2013, in
which she alleged UHG retaliated against her for reporting HIPAA
violations.  Plaintiff relies on the temporal proximity between
her alleged protected activities and the adverse employment
actions to establish a causal connection.

  **1.** **Plaintiff's removal from the Admin team.**

  It is undisputed that during the August 6, 2012,
meeting with Kauppila, Plaintiff told Kauppila that A.J. had
given her work computer user name and password to a neighbor and
had allowed the neighbor to use her work computer.  Plaintiff
believed A.J.'s conduct was a violation of HIPAA.  The record,
however, reflects Plaintiff reported the alleged violation for

26 - OPINION AND ORDER

the first time after Kauppila decided to remove Plaintiff from
the Admin team.  Specifically, Plaintiff testified at deposition
that she did not advise management about A.J.'s actions before
the August 6, 2012, meeting because she "didn't want to see
anything happen to [A.J.] in a negative way."  Fredrickson Decl.,
Ex. A at 12.

  Because the record reflects Kauppila made the
decision to remove Plaintiff from the Admin team before Plaintiff
made any report of A.J.'s alleged HIPAA violation, the Court
concludes Plaintiff has not established a causal connection
between her removal from the Admin team and her report of A.J.'s
alleged HIPAA violation.

  **2.    Plaintiff's termination**.

  Plaintiff relies on the temporal proximity of her
April 2014 termination and the August 2012 draft CAP, her March
2013 complaint that Sedgwick violated HIPAA, and her July 2013
report to the DOL to establish a causal connection between her
termination and her reports of the alleged HIPAA violations.

  Courts have made clear that when a plaintiff
"attempts to establish the causal connection indirectly, relying
on mere temporal proximity between the events, the events must be
'very close' in time."  *Boynton-Burns*, 197 Or. App. at 381
(citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273
(2001)).  For example, in *Miller v. Clark County School District*

27 – OPINION AND ORDER

the Ninth Circuit held the plaintiff failed to establish that a genuine dispute of material fact existed as to whether his protected conduct was a motivating factor in his termination based on the temporal proximity of his engagement in the allegedly protected activity and his termination for insubordination "more than a month" later.  378 F. App'x 623, 626 (9th Cir. 2010).  Similarly, in *Swan v. Bank of America* the Ninth Circuit concluded the plaintiff could not establish her termination was "causally related" to her medical leave because the defendant terminated her "four months after her return from leave, which is too remote in time to support a finding of causation premised solely on temporal proximity."  360 F. App'x 903, 906 (9th Cir. 2009)(citing *Breeden*, 532 U.S. at 273).  In several cases district courts in the Ninth Circuit have concluded that seven to nine months between the protected activity and the adverse action does not constitute sufficient temporal proximity to establish a causal connection.  *See, e.g., Anderson v. City and County of San Francisco*, 169 F. Supp. 2d 995, 1028 (N.D. Cal. Mar. 14, 2106) (seven months is insufficient); *Santa Ana Police Officers Ass'n v. City of Santa Ana*, No: SA CV 15-1280-DOC(DFMx), 2016 WL 827750, at *12 (C.D. Cal. Mar. 2, 2016)(eight months is insufficient).

      The time between Plaintiff's April 2014 termination and her August 2012 complaint that A.J. violated

28 - OPINION AND ORDER

HIPAA was more than 19 months, the time between Plaintiff's April 2014 termination and her March 2013 complaint that Sedgwick violated HIPAA is 13 months, and the time between Plaintiff's termination and her July 2013 DOL complaint is eight months. Plaintiff's termination, therefore, did not occur "very close" in time to Plaintiff's allegedly protected activities.

On this record the Court concludes Plaintiff has failed to establish a causal connection between her termination and any of her allegedly protected activities.

   **3.    Drafting of the CAP**.

As noted, on August 30, 2012, Kauppila and Zaniewski drafted a CAP that provided Plaintiff with 90 days to improve her performance.  It is undisputed that Kauppila and Zaniewski never delivered or presented the CAP to Plaintiff.

Plaintiff alleges Kauppila and Zaniewski drafted the CAP in retaliation for Plaintiff's August 6, 2012, report that A.J. violated HIPAA.  Plaintiff relies on the temporal proximity of the drafting of the CAP to her August 6, 2012, HIPAA violation report to establish a causal connection.  The record reflects Kauppila and Zaniewski drafted the CAP on August 30, 2012, which was approximately three weeks after Plaintiff reported A.J.'s alleged HIPAA violation.  The Court finds three weeks is sufficiently close in time to support a *prima facie* finding of causality.

29 – OPINION AND ORDER

Defendant asserts the draft CAP is not an adverse employment action, and, therefore, Plaintiff has not established a *prima facie* case of retaliation.  Defendant also asserts even if Plaintiff established a *prima facie* case of retaliation, Defendant has a legitimate, nondiscriminatory reason for drafting the CAP.

As noted, Kauppila and Zaniewski never provided or presented the CAP to Plaintiff.  In addition, the record does not reflect there were any tangible employment effects on Plaintiff as a result of the draft CAP.  In fact, Plaintiff testified at deposition that "there was no corrective action plan" before she left on medical leave on August 29, 2012.  Fredrickson Decl., Ex. A at 9.  Thus, there is not any indication that the CAP draft of which Plaintiff was unaware and which did not result in any tangible employment harm "might well have dissuaded a reasonable [person] from making . . . a charge" of HIPAA violation.  *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 868 (9th Cir. 2014).

On this record the Court, therefore, concludes the drafting of the CAP was not an adverse employment action.  *See, e.g., Pasco v. Mentor Graphics Corp*, 199 F. Supp. 2d 1034, 1054 (D. Or. 2001)("A negative performance evaluation . . . that does not remain in the employee's file or result in some other tangible employment harm is not an adverse employment action.")

30 – OPINION AND ORDER

(citing *Kortan v. Cal. Youth Auth*., 217 F.3d 1104, 1112–13 (9th Cir. 2000)). Plaintiff, therefore, has not established a *prima facie* case of retaliation based on the CAP.

Even if Plaintiff had established a *prima facie* case of retaliation based on the draft CAP, Defendant, as noted, asserts it had a legitimate, nondiscriminatory reason for drafting the CAP. Specifically, Defendant asserts Kauppila and Zaniewski drafted the CAP after Kauppila observed Plaintiff struggled to complete her daily work and heard reports from Plaintiff's coworkers that they were frustrated with Plaintiff's unnecessarily long emails, that Plaintiff was difficult to work with, and that they did not want to be partnered with Plaintiff because they felt they were doing the majority of the work.

On this record the Court concludes Defendant has provided a legitimate, nondiscriminatory reason for drafting the CAP. The burden, therefore, shifts back to Plaintiff to prove the reason given by Defendant for drafting the CAP was pretextual.

To establish pretext Plaintiff must either raise an issue of fact as to whether Defendant's legitimate, nondiscriminatory reason is genuine or introduce direct evidence of a discriminatory motive. *See Villiarimo*, 281 F.3d at 1063. As noted, temporal proximity alone is insufficient to establish evidence of pretext. *Ventura*, 2010 WL 3767882, at *10. *See also*

31 - OPINION AND ORDER

*Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997)(although the temporal proximity of an adverse employment action to an employee's protected behavior may suffice to support a "minimal *prima facie* case of retaliation," it is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question" of retaliation).  Plaintiff does not identify any nonspeculative evidence to establish that Defendant's stated legitimate, nondiscriminatory reason for drafting the CAP is pretextual.  The record contains emails from Plaintiff's coworkers in which they complained about Plaintiff's performance and communications.  The record also includes memoranda and emails from Plaintiff's managers in which they express concerns about Plaintiff's performance and complaints from Plaintiff's coworkers.  Plaintiff testified in her deposition that several of her coworkers criticized her performance.  Fredrickson Decl., Ex. A at 15-17.  Viewing the evidence in the light most favorable to Plaintiff, the Court concludes Plaintiff has not established Defendant's stated legitimate, nondiscriminatory reason for drafting the CAP was pretextual.

On this record the Court concludes Plaintiff has not established a genuine dispute of material fact exists as to Plaintiff's Second and Third Claims for retaliation. Accordingly, the Court grants Defendant's Motion for Summary

32 - OPINION AND ORDER

Judgment as to those claims.

## IV.  Plaintiff's Fourth Claim for Wrongful Termination

In her Fourth Claim Plaintiff alleges Defendant terminated her in substantial part for her "good faith reports of violations of federal law and her filing of a BOLI complaint."  Compl. at ¶ 41.  Defendant moves for summary judgment on the grounds that Plaintiff cannot bring a wrongful-termination claim because she has adequate statutory remedies and she has not established she was terminated because of her reports of violations of federal law or for filing a BOLI complaint.

### A.  Standards

Under Oregon law an employer may discharge an employee at any time for any reason unless doing so violates a contractual, statutory, or constitutional requirement.  *Yeager v. Providence Health Sys. Or.*, 195 Or. App. 134, 140 (2004).  The tort of wrongful discharge is a narrow exception to this general rule.  *Dew v. City of Scappoose*, 208 Or. App. 121, 140 (2006).  The tort of wrongful discharge was not intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question is unacceptable and no other remedy is available.  *Reddy v. Cascade Gen., Inc.*, 227 Or. App. 559, 567 (2009)(citation omitted).  Oregon courts have recognized two circumstances that give rise to the common-law tort of wrongful discharge:  (1) discharge for exercising a job-related

33 - OPINION AND ORDER

right of important public interest and (2) discharge for complying with a public duty.

**B.    Plaintiff's wrongful-termination claim related to Oregon Revised Statute § 659A.199**

Defendant contends Plaintiff may not bring a claim for wrongful termination related to her reports of alleged violations of federal law because Oregon Revised Statute § 659A.199 provides an adequate statutory remedy.  *See, e.g., Shaw v. Action Fin. Svcs. LLC.*, No. 1:14-CV-00469-CL, 2014 WL 4404961, at *3 (Sept. 5, 2014)("ORS § 659A.199 provides an adequate (if not better) remedy than a wrongful termination claim.  Thus, Shaw's claim that AFS violated ORS § 659A.199 by retaliating against Shaw for Shaw's report of alleged discrimination against him precludes a common law wrongful termination claim based on the same conduct."); *Shapiro v. Am. Bank. [FSB]*, No. 3:12-cv-1358-AC, 2013 WL 6157266, at *4 (Nov. 21, 2013)(same); *Franklin v. Clarke*, No. 10-00382-CL, 2011 WL 4024638, at *11 (D. Or. Sept. 9, 2011) (same); *Duran v. Window Prods., Inc.*, CV No. 10-125-ST, 2011 WL 1261190, at *2-3 (D. Or. Mar. 29, 2011)(same).  *But see Krouse v. Ply Gem Pac. Windows Corp.*, No. 10-111-HA, 2011 WL 2971774, at *8 (D. Or. July 19, 2011)(holding the plaintiff's wrongful-discharge claim was not precluded by § 659A.199).

In *Duran* the court thoroughly analyzed whether Oregon Revised Statute § 659A.199 provides an adequate statutory remedy. In that case the plaintiff brought a claim under § 659A.199 and a

34 - OPINION AND ORDER

claim for wrongful termination.  In bringing her wrongful-termination claim, the plaintiff relied on *Olsen v. Deschutes Cty.*, 204 Or. App. 7 (2006), in which the Oregon Court of Appeals addressed whether the court should dismiss the plaintiffs' wrongful-termination claim because the plaintiffs had the option of pursuing adequate statutory remedies under § 659.510 (renumbered § 659A.203) of Oregon's whistleblower statute. *Duran*, 2011 WL 1261190, at *4.  The Oregon Court of Appeals concluded the fact that the statutory remedies were adequate was insufficient standing alone because the legislature stated explicitly in the text of the statute that the remedies were not intended to restrict or to impair any existing common-law remedies.  The plaintiff in *Duran* contended even though the statutory remedies under § 659A.199 were adequate, the legislature specifically provided in § 659A.199(2) that the remedies are "in addition to any common law remedy . . . for the conduct constituting a violation of this section," and, therefore, the plaintiff's wrongful-termination claim was not precluded by § 659A.199 under *Olsen*.  The court, however, rejected the plaintiff's argument.  Although the court conceded the language of § 659A.199(2) in conjunction with the holding in *Olsen* appears to suggest that the plaintiff's wrongful-termination claim was not precluded, the court noted two grounds for declining to follow the reasoning in *Olsen*:

35 - OPINION AND ORDER

First, *Olsen* interprets Oregon Supreme Court precedent in this area in a manner that the [Oregon] [S]upreme [C]ourt itself has not expressly articulated and which is arguably contrary to that higher court's still-controlling holdings on this point. In fact, the Oregon Supreme Court has never expressly overruled or even clarified its prior decisions to mean what *Olsen* holds. Second, the requirement that clear legislative intent always be present before a wrongful discharge claim is precluded — that an adequate statutory remedy by itself is not enough — necessarily expands the tort of wrongful discharge into areas where legislation already has given the claimant an adequate remedy and the public's interest is protected. Such expansion is clearly at odds with the tort's original construct, "to fill a remedial gap where a discharge would be left unvindicated," *Dunwoody v. Handskill Corp.*, 60 P.3d 1135, 1139 (Or. Ct. App. 2003), and its original purpose to "serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper*, 995 F. Supp. at 1129. Put another way, *Olsen*'s holding at least enlarges the availability of the tort in ways that the Oregon Supreme Court did not contemplate when it created the tort and has not expressly approved since, thus potentially converting the tort from being a narrow exception to the general rule to the general rule itself.

2011 WL 1261190, at *3 (quoting *Reid v. Evergreen Aviation Ground Logistics Enter., Inc.*, Civil No. 07-1641-AC, 2009 WL 136019, at *15-20 (D. Or. Jan. 20, 2009)).

This Court has previously adopted the reasoning set out in *Duran* and continues to do so here. *See, e.g.*, Findings and Recommendation of Dennis James Hubel, M.J. (adopted on June 24, 2008, by Brown, J.), *James v. Evergreen Intern. Airlines, Inc.*, No. 07-CV-1640-HU, 2008 WL 2564804, at *5 (D. Or. June 23, 2008) ("[The plaintiff] argues that the test used in *Draper* to

36 - OPINION AND ORDER

determine whether an alternate remedy exists requires a showing
that an alternate adequate remedy exists and that the legislature
intended the remedy to supersede common law remedies.  [The
plaintiff] is incorrect.  The test is a disjunctive one in which
a wrongful termination claim is precluded if the alternate remedy
is adequate or if the legislature intended the remedy to
supersede common law remedies.").  Thus, the Court concludes the
presence of an adequate statutory remedy precludes a claim for
wrongful termination that is based on the same conduct.

On this record the Court concludes Plaintiff's
wrongful-termination claim is precluded to the extent that her
claim is based on the conduct that underlies her claim for
violation of § 659A.199.  The Court, therefore, grants
Defendant's Motion for Summary Judgment as to the portion of
Plaintiff's claim for wrongful termination based on the conduct
that underlies her claim for violation of § 659A.199.

**C.    Plaintiff's wrongful-termination claim related to
       Oregon Revised Statute § 659A.230.**

Defendant contends Plaintiff may not bring a claim for
wrongful termination related to her BOLI report because Oregon
Revised Statute § 659A.230 provides an adequate statutory remedy.

Courts in this district have held § 659A.230 provides
an adequate statutory remedy, which precludes a claim for
wrongful termination.  *See, e.g., Shapiro,* 2013 WL 6157266, at

37 - OPINION AND ORDER

*5; *Franklin,* 2011 WL 4024638, at *11 (D. Or. Sept. 9, 2011) (same); *Duran*, 2011 WL 1261190, at *4.  The Court adopts the reasoning of these cases and concludes Plaintiff's wrongful-termination claim based on her BOLI report is precluded because § 659A.230 provides an adequate statutory remedy.

Accordingly, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's wrongful-termination claim.

## <u>CONCLUSION</u>

For these reasons, the Court **GRANTS** Defendant's Motion (#87) for Summary Judgment and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 1st day of November, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


38 - OPINION AND ORDER